Hillsborough, }
Nov. 5, 1902. }

### STATE *v.* MANCHESTER SAVINGS BANK.

### STATE *v.* AMOSKEAG SAVINGS BANK.

Under chapter 108, Laws 1895, savings banks are not exempted from taxation upon railroad bonds secured by mortgage of real estate situate within this state and of all other property, rights, and franchises of the corporation.

It is incumbent upon the party who asserts a claim of exemption from taxation to show that the privilege is conferred by language which admits of no other conclusion ; and he is not entitled to a construction which extends beyond its obvious import the language employed.

ASSUMPSIT, for taxes for the year 1900. Facts agreed, and case transferred from the May term, 1902, of the superior court by *Young,* J.

April 1, 1900, the Manchester Savings Bank owned bonds of the Concord & Montreal Railroad and of the Concord & Claremont Railroad, amounting together to $250,000, par value; and the Amoskeag Savings Bank was the owner of $113,000 of the bonds of the Concord & Montreal Railroad. These bonds all bear interest at a rate less than five per cent, and are secured by mortgage of all the real estate of said railroads, which is situate wholly in this state, and of all the other property, franchises, and rights of the corporations. Exemption from taxation is claimed under chapter 108, Laws 1895, which provides for a tax of three fourths of one per cent upon the general deposits, "after deducting . . . the value of all . . . loans secured by mortgage upon real estate situated in this state made at a rate not exceeding five per cent per annum."

*Edwin G. Eastman,* attorney-general, for the state.

*Isaac L. Heath,* for the Manchester Savings Bank.

*Brown, Jones & Warren,* for the Amoskeag Savings Bank.

PARSONS, C. J. The question raised is whether the legislature included within the exemption intended railroad bonds secured by a mortgage, not only of the real estate, but also of all the property, rights, and franchises of the railroad. In addition to the general rule, that the words used in a written instrument shall be given the signification attached to them by the parties, when ascertained by competent evidence, it is specially provided that in the construction of all statutes "words and phrases shall be construed according to the common and approved usage of the language." P. S., c. 2, ss. 1, 2.

In the report of the bank commissioners, December 1, 1894, to the governor, and by him laid before the legislature, the defendants' investments are classified. One class is "loans secured by local real estate"; another is "railroad bonds." Under the latter head are enumerated the securities for which exemption is claimed. A similar classification is used as to all other banks, not only in the report for that year, but in reports for other years. In their report for 1894, the commissioners argue with great earnestness the necessity of relief for the savings banks by a reduction in taxation. Acting upon these suggestions, the legislation under consideration was adopted. The rate of taxation was reduced from one per cent to three fourths of one per cent, and the exemption from any tax was increased by the clause in question: "all . . . loans secured by mortgage upon real estate situ-

ated in this state made at a rate not exceeding five per cent per annum." Laws 1895, *c.* 108, *s.* 1.

As it appears that at the time of this act all savings banks held a class of investments known as "loans secured by local real estate," and also another class known as "railroad bonds," the description of one class in apt terms, without reference to the other, renders it probable the legislature intended to exempt those investments which by common and approved usage, evidenced by the report upon which the action was taken, were included within the class described, and not those which the same usage and custom described by other terms. That the common usage of language, as understood by the legislature, distinguishes between loans secured by mortgage of real estate and bonds, is evidenced by other provisions. Laws 1895, *c.* 105, *s.* 12 ; *Ib., c.* 114, *s.* 1, *cl.* 1, 9. As the defendants claim an exemption, the burden is upon them to show that it is conferred by language open to no other conclusion. *Phillips Academy* v. *Exeter,* 58 N. H. 306, 307. Since it is probable that if the legislature had intended to include within the exemption certain classes of investments commonly denominated railroad bonds, as well as those known as loans secured by local real estate, apt language would have been used to define such exemption, the defendants are not entitled to a construction extending beyond the obvious import the meaning of the language used.

If there were any doubt as to the meaning of the act of 1895, weight might be given to the act of 1901 (*c.* 82) as a declaratory statute. *Abbot* v. *Kimball,* 68 N. H. 303. This act expressly excludes investments of the character in question from the benefit of the exemption claimed.

Whether the mortgages described, which include all the property, rights, and franchises of the mortgagors as well as their interest in real estate, are real estate mortgages within the meaning of the statute, may not be entirely clear ; but upon other grounds the meaning of the act is so plain it has not been thought necessary to investigate the question. The state is entitled to judgment.

*Case discharged.*

CHASE and BINGHAM, JJ., did not sit: the others concurred.