**UNITED STATES of America**
v.
**TOWN OF MARLBOROUGH, NEW HAMPSHIRE.**
Civ. A. No. 3003.

United States District Court
D. New Hampshire.
Nov. 7, 1969.

David A. Brock, U. S. Atty., John D. McCarthy, Regional Counsel, SBA, Concord, N. H., Frances C. Kissell, Liquidation Counsel, Boston Area Office, SBA, Boston, Mass., for plaintiff.

George R. Hanna, Faulkner, Plaut, Hanna and Zimmerman, Keene, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is a civil action brought by the United States for declaratory judgment and injunctive relief pursuant to Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202 (1964). Jurisdiction is conferred on the Court by Title 28 U.S.C. § 1345 (1964).

The plaintiff seeks a declaratory judgment of its rights against the claim of defendant to proceeds from a foreclosure and auction of land and buildings, machinery, and stock-in-trade.

The pertinent facts leading to the controversy have been stipulated. On August 13, 1965, Snow Diamond Products, Inc. (Snow), a New Hampshire corporation located in Marlborough, New Hampshire, executed a mortgage deed to secure a note for $100,000, conveying its land and factory buildings in Marlborough to the Manchester National Bank, which was recorded on August 13, 1965. On the same date, the corporation also executed a security agreement conveying a security interest in all its machinery, equipment (excluding automotive equipment), furniture and fixtures "now owned or hereafter acquired," together with all proceeds of these items to the bank. All recording requirements were followed.

The tax year in New Hampshire, insofar as it pertains to real estate and personal property, runs from April 1st to March 31st of the following year. The town, duly and validly, assessed taxes against Snow for the tax year 1967–68 as follows:

| | |
|---|---|
| Land | $ 185.23 |
| Buildings | 786.59 |
| Machinery | 2,366.40 |
| Stock-In-Trade | 672.60 |
| Total | $4,010.82 |

An abatement was allowed on the stock-in-trade tax of $389.40, reducing the total assessment to $3,621.42.

On or about June 22, 1968, someone paid $109.28 to the Tax Collector and this amount was credited towards the tax liability of Snow and, specifically, was credited as a payment of interest and costs on the 1967–68 taxes.

The town assessed taxes against Snow for the tax year 1968–69 as follows:

| | |
|---|---|
| Land | $ 175.74 |
| Buildings | 933.24 |
| Machinery | 1,616.00 |
| Stock-In-Trade | 141.40 |
| Total | $2,866.38 |

On May 29, 1968, the real estate mortgage, note, and security agreement were assigned by the bank to the Small Business Administration (SBA) and duly recorded. On October 8, 1968, after complying with the statutory notice requirements, the SBA sold the land and buildings by foreclosure and the machinery and stock-in-trade by auction. Prior to the sale, the town advised the SBA, through its Tax Collector, that Snow was delinquent in payment of real estate and personal property taxes for the years

1967 and 1968. To avoid confusion and in the interest of disposing of the assets expeditiously, the SBA announced at the sale that the land and buildings, machinery, and equipment would be sold free and clear of all encumbrances with the exception of the 1968 real estate taxes which would be apportioned as of the date of transfer of title, and that the SBA would pay all outstanding prior liens. The land and buildings were sold to one Stanley Payne for $14,212.63 subject to the taxes on land and buildings for 1968 apportioned as of that date, and the SBA agreed to indemnify Mr. Payne for any other such taxes as he might be required to pay by the town.

Prior to October 8, 1968, the Tax Collector advertised and sold to the town the land and buildings, machinery, and stock-in-trade of Snow for the unpaid 1967 taxes. It has been stipulated that there were no procedural defects in such advertisement and sale except that the plaintiff claims, as a matter of law, that the personal property should have been distrained pursuant to New Hampshire statutes rather than advertised and sold as real estate. If it were not for an injunction agreed upon by the parties and issued by this Court on July 25, 1969, the town would have advertised and sold the land and buildings, machinery, and stock-in-trade of Snow for 1968 taxes. The balance of taxes due the town from Snow for 1968 remains unpaid.

The over-all issue in the case can be stated as follows: Whether the town had a lien for taxes on the land and buildings, machinery, and stock-in-trade, plus interest and costs which was superior to the mortgage and security interest held by the SBA on October 8, 1968.

The initial step in determining this issue is to look first to the applicable federal law. Director of Revenue, State of Colorado v. United States, 392 F.2d 307 (10th Cir. 1968); United States v. Clover Spinning Mills Co., 373 F.2d 274 (4th Cir. 1966). The relevant federal statute requires that state law be followed in determining the priorities between any interest of SBA in property as security for a loan and a lien on such property for state taxes.[1]

Therefore, we turn to New Hampshire law to determine what constitutes real estate for tax purposes and the scope of a tax lien on such real estate. There is no question that land is real estate. The plaintiff also has agreed that the buildings are real estate. (Record at 5.) The plaintiff takes the position, however, that machinery and stock-in-trade are not real estate and that the real estate tax lien does not cover them.

■ We first discuss the classification of machinery under New Hampshire tax law. New Hampshire Revised Statutes Annotated, Chapter 72, Section 7 (1955), provides:

> *Buildings, etc.* Buildings, mills, machinery, wharves, ferries, toll-bridges, locks and canals and aqueducts owned by private parties, any portion of the water of which is sold or rented for pay, are taxable as real estate.

The language of this statute is clear. The statute has been construed at least twice by the New Hampshire Supreme Court and such construction leaves no doubt that machinery is real estate for tax purposes in the State of New Hampshire. In Kolodny v. Laconia, 96 N.H. 337, 76 A.2d 507 (1950), the Court held at pages 338 and 339, 76 A.2d at p. 508:

> The question of whether or not the machines are real or personal property for purposes other than taxation is not pertinent to the present case[,] for the Legislature by proper classification has the power to make any kind of property personalty for the pur-

1. 15 U.S.C. § 646 (1964) provides:
Any interest held by the Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest were held by any party other than the United States.

poses of taxation, though it is real estate by the common law and for all other purposes, and vice versa. 3 Cooley, Taxation, § 1065. The material issue here is whether or not the Legislature intended that machines such as these [then in storage] be subject to taxation under the provisions of said R.L., c. 73, § 8. It is our opinion that it did so intend.[2]

See also Petition of Gilbert Associates, 97 N.H. 411, 90 A.2d 499 (1952), rev'd on other grounds, United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953).

The plaintiff has urged upon the Court, as authority for its contention that machinery is not subject to the real estate tax lien, the recent Maine case of United States v. Town of Pittsfield, 302 F.Supp. 316 (D.Me.1969). The Court has read the opinion in that case carefully and finds it inapplicable. The Maine case was only concerned with personal property and there is no Maine statute that is even remotely similar to NH RSA ch. 72 § 7.

The Court rules that the machinery is to be treated as real estate for tax purposes and is within the scope of the New Hampshire real estate tax lien.

■ The next question involves the proceeds of the sale of stock-in-trade. It is to be noted at the outset that there is no statutory provision under New Hampshire law either making stock-in-trade real estate for tax purposes or giving the town a lien on the real estate for non-payment of the stock-in-trade tax. The town's remedy for non-payment of stock-in-trade taxes is to distrain. NH RSA ch. 80, § 8. It has been agreed that there was no distraint by the town in this case. This precise question has already been decided by the New Hampshire Supreme Court in the case of Flack v. Byse Agen-

cy, Inc., 96 N.H. 335, 76 A.2d 788 (1950), in which the Court held:

Since the provisions of our statutes contain no express provision for a lien upon personal property, and none is required by necessary implication, we conclude that the Legislature intended none. At page 337, 76 A.2d at pages 789–790.

The Court rules that the proceeds from the sale of the stock-in-trade belong to the SBA.

■ The plaintiff also claims, albeit half-heartedly, that its prior recorded mortgage is superior to the New Hampshire real estate tax lien.[3] Unlike the real estate lien statutes in many other states which specifically provide that such liens shall have priority over all the other liens and assessments, there is no such language under the New Hampshire statute. This Court is, therefore, faced with the same problem that the Montana District Court faced in United States v. C. O. Christensen, 218 F.Supp. 722 (D.Mont.1963). The observation of that Court at page 724 bears repeating:

This contention of the United States poses an issue of far reaching importance. For many years it has been assumed in Montana that state and local tax liens were superior to the liens of all private mortgagees. Provisions are commonly inserted in mortgages that the mortgagor must diligently pay all state and local taxes, that his failure to do so constitutes a default entitling the mortgagee to foreclose, and that upon such default the mortgagee is empowered to pay the taxes and add any amount so paid to the amount of the original debt secured by the mortgage.[2] As far as can be determined, no mortgagee has heretofore contended that a mortgage is superior to state

2. R.L., c. 73, s. 8 is the same as NH RSA ch. 72 § 7.

3. NH RSA ch. 80 § 19 provides:
   *Lien.* The real estate of every person or corporation shall be holden for all

taxes assessed against the owner thereof; and all real estate to whomsoever assessed shall be holden for all taxes thereon. All such liens shall continue until one year from October first following the assessment.

and local taxes subsequently assessed. At least this contention has not been considered by the Supreme Court of Montana. [Footnote omitted.]

Likewise, this Court has been unable to find any New Hampshire Supreme Court decision deciding the question of priority as between a real estate tax lien and a prior recorded mortgage. The Court must, as the Montana Court did, face the fact that mortgage procedure in New Hampshire and, particularly, mortgage foreclosure procedure has always been carried out on the basic assumption that the town had a prior lien for real estate taxes, which lien included interest and costs. Mortgages in this state are written to provide for payment of real estate taxes.[4] Furthermore, NH RSA ch. 80 § 28 provides that the purchaser of any real estate sold by a collector of taxes shall within thirty days from the date of the sale notify all persons holding recorded mortgages upon the property. Such notice has to give the date of the tax sale, the name of the delinquent taxpayer, the total amount for which the real estate was sold, and the amount of costs of notifying the mortgagee. The statute further provides that any tax sale shall be void as against any mortgagee, and no tax collector's deed based on the sale can be valid unless the mortgagee shall have been properly notified. It is obvious that the purpose of this statute is to give the mortgagee an opportunity to pay the taxes and redeem the property. Such notice would not be necessary if the mortgage had priority over the tax lien.

While the statute itself does not state in so many words that a real estate tax lien shall have priority over other liens, the consistent assumption and practice by mortgagees and tax collectors, and the notice provisions of the tax statutes gives it that effect.

The Court rules that the real estate tax lien is superior to the mortgage.

Based on the agreed statement of facts, the Court makes the following order:

A. There is due the town from the plaintiff for the tax year 1967–68, the sum of $3,228.94 plus interest at 6% from December 1, 1967, to date. The Court's computation follows:

| | |
|---|---|
| Real Estate Tax on Land | $ 185.23 |
| Real Estate Tax on Buildings | 786.59 |
| Real Estate Tax on Machinery | 2,366.40 |
| Total | $3,338.22 |
| Less Interest and Costs Paid | 109.28 |
| Balance | $3,228.94 |

B. There is due the town from the plaintiff for the tax year 1968–69, the sum of $1,616.00 plus interest at 6% from December 1, 1968, to date. The Court's computation follows:

| | |
|---|---|
| Real Estate Tax on Land | $ 175.74 |
| Real Estate Tax on Buildings | 933.24 |
| Real Estate Tax on Machinery | 1,616.00 |
| Total | $2,724.98 |
| Less Taxes Paid | 1,108.98 |
| Balance | $1,616.00 |

It is noted that no tax costs were incurred by the town in 1968.

———◆———

So ordered.

4. See Statutory Form of Power of Sale Mortgage, NH RSA ch. 477 § 29.