Merrimack
No. 7131

KING RIDGE, INC. v. TOWN OF SUTTON

May 30, 1975

*Cleveland, Waters & Bass* and *Robert T. Clark (Mr. Clark* orally) for the plaintiff.

*Upton, Sanders & Smith ( Mr. Richard F. Upton* orally) for the defendant.

KENISON, C.J. The issue presented by this appeal is whether ski lifts used for downhill skiing are taxable under the provisions of RSA ch. 72 (Persons and Property Liable to Taxation). Pursuant to Laws 1973, 544:16 (Disposition of Pending Applications for Abatement) plaintiff transferred its petitions for abatement of real estate taxes to the Merrimack County Superior Court. *See* RSA 76:17 (Supp. 1973) (Abatement by Court). *Keller,* C.J., reserved and transferred without ruling three questions:

> (1). Is the property comprising ski lifts, as described in the agreed statement of facts and exhibits, taxable, either in whole or in part, in the tax years in question?
> (2). If only a portion of said property is taxable, what items are taxable and what items are not taxable?
> (3). If the property comprising ski lifts, or some portion thereof, is not taxable to what extent and in what manner is plaintiff entitled to receive an abatement of taxes?

Plaintiff, King Ridge, Inc., is a New Hampshire corporation which owns and operates a winter ski area known as King Ridge located in the town of Sutton. On April 1 in each of the years 1970, 1971 and 1972, plaintiff owned one double chair lift, two T-bars and two

J-bars. *See* RSA 74:1 (Annual Invoice of Polls and Taxable Property: Annual List). As of April 1, 1973, it also owned a triple chair lift.

On the basis of the agreed statement of facts, a ski lift may be defined as a device for transporting skiers uphill, comprised basically of a continuous cable loop suspended between two terminals and supported by a series of intermediate towers. One terminal, known as the "drive terminal", contains the lift motor for propelling a wheel (the "bull wheel") around which the cable turns. The other terminal, the "tension terminal", has another bull wheel mounted on a moveable carriage from which is suspended a large counterweight for maintaining tension on the lift cable according to varying loads.

The intermediate steel towers, which are either embedded in the earth or anchored to ledges, support the cable by adjustable sheave wheel assemblies mounted on arms extending from the towers. J-bars, T-bars and chairs that are attached to the cable carry skiers uphill to one terminal and return empty to the other. The parties have agreed that for the purpose of this appeal, there is no significant difference between the six ski lifts owned by King Ridge, Inc.

In the years 1970-1973, inclusive, the town of Sutton assessed and collected a real estate tax on "all ski lifts, cables, engines, gear boxes, towers, motive sources, sheave wheels, chairs, T-bars, cable grips and all other peripheral property comprising all of the ski lifts" owned by the plaintiff under RSA 72:6. In each of the four years, King Ridge, Inc., petitioned for a tax abatement, claiming that ski lifts are not "real estate" as that term is used in RSA 72:6 and that the deletion of the word "machinery" from RSA 72:7 (effective March 31, 1970) eliminated ski lifts from taxation as real estate. RSA 76:16 (Abatement by Selectmen or Assessors); Laws 1970, 5:3. On appeal to the State tax commission from the town's denial of an abatement for 1970, plaintiff's request for abatement was denied on the ground that ski lifts are taxable under RSA 72:6. RSA 76:16-a (Abatement by Tax Commission) *as amended* (Supp. 1973) (Abatement by Board of Taxation) (effective September 1, 1973). No hearings on plaintiff's further requests for abatement in 1971 and 1972 were held by the State tax commission prior to September 1, 1973. *See* Laws 1973, 544:16. The three appeals from the denials of tax abatement for the years 1970, 1971, and 1972 were consolidated by the superior court with plaintiff's petition for an abatement of 1973 taxes. RSA 76:17 (Supp. 1973).

As a general rule taxes cannot be assessed and collected in this State except by authority of the legislature. *Bull v. Gowing,* 85 N.H. 483, 484, 160 A. 475, 476 (1932); *Boston & Maine R.R. v. Concord,* 78

N.H. 192, 194, 98 A. 66, 68 (1916). RSA 72:6 (Property Taxes) provides that "[a]ll real estate, whether improved or unimproved, shall be taxed except as otherwise provided." If ski lifts are real estate within the meaning of that term as used in RSA 72:6, they are taxable unless exempted by some other provision.

## I. Effect of the 1970 Amendment to RSA 72:7

Plaintiff maintains that the history of RSA 72:7 demonstrates a legislative intent to remove ski lifts from the classes of property taxable as real estate. The primary basis for plaintiff's position is that the word "machinery" as deleted from RSA 72:7 in 1970 included ski lifts. Laws 1970, 5:3.

The predecessor to RSA 72:7 provided that "[b]uildings, mills, carding machines, factory buildings, and machinery, wharves, ferries, toll bridges, locks and canals, and aqueducts any portion of the water of which is sold or rented for pay, are taxable as real estate." GS 49:3 (1867); GL 53:3 (1878), PS 55:3 (1891); see RS 39:2 (1842); CS 41:2 (1853). With the elimination in 1917 of the words "carding machines, factory buildings and," the statute assumed essentially its present form. Laws 1917, 6:1; see RL 73:8 (1942); RSA 72:7. The 1917 amendment was intended to make it clear that machinery not connected with factory buildings such as a printing press was taxable under the provision. Seventh Annual Report of the New Hampshire Tax Commission 3-4 (1917).

As interpreted by this court the word "machinery" in RSA 72:7 prior to 1970 meant "certain instruments of production or machines which by their nature are designed for use in connection with real estate whether or not they are part of or attached to the realty." *Kolodny v. Laconia,* 96 N.H. 337, 339, 76 A.2d 507, 508 (1950); *see Petition of Gilbert Associates, Inc.* 97 N.H. 411, 414, 90 A.2d 499, 501 (1952) *(rev'd on other grounds, United States v. Gilbert Associates,* 345 U.S. 361 (1953)); *Bull v. Gowing,* 85 N.H. 483, 485, 160 A. 475, 476 (1932). Under this interpretation of the statute, hoisery knitting and electro-plating machines were held to be taxable as real estate, but a steam shovel was classified as not taxable. *Id.*

While the judicial interpretation of "machinery" to include machines "designed for use in connection with real estate" was a seemingly broad one, the statute was administratively applied narrowly to include taxation of factory machinery only. The selectmen were directed by the tax appraisal statute to "set down in their invoice, in separate columns, the value . . . of mills, factories and

their machinery . . . ." RL 76:4 (1942) (Appraisal of Taxable Property: Invoices); PL 63:3 (1926). As later amended the tax appraisal statute specified that the selectmen were to "set down in their inventory, in separate columns, the value . . . of factories and factory machinery." Laws 1969, 23:4; Laws 1967, 72:1. Despite repeated recommendations to expand the category of taxable machinery beyond the scope of factory machinery, the legislature did not do so. Tax Policies in New Hampshire, Report of the Commission to Recommend Reorganization of the Tax Structure 40-42 (1954); Report of the New Hampshire Interim Committee on Overall Taxation 29 (1949).

Eventually in accordance with the recommendations of a citizens task force, the word "machinery" was eliminated from RSA 72:7, effective March 31, 1970. Laws 1970, 5:3; Report of the New Hampshire Citizens Task Force 48 (1970). Since "machinery" as that term was used in RSA 72:7 and its predecessors was restricted to "factory machinery", the deletion of the term had no effect on the taxability of ski lifts as real estate.

## II. Taxability of Ski Lifts Under RSA 72:6

The town of Sutton maintains that ski lifts are taxable as real estate under the general provision of RSA 72:6 for taxation of "all real estate, whether improved or unimproved." The decisions of the State tax commission and its successor, the State board of taxation, disagree as to the proper classification of ski lifts. *See* Laws 1911, 169:1 (RSA 71:1 [The Tax Commission], replaced by RSA 71-B:1 [Supp. 1973] [The Board of Taxation], effective September 1, 1973). In two decisions in 1971 the State tax commission held that ski lifts were taxable as real estate under RSA 72:6. Ragged Mountain Corp., January 14, 1971 (N.H. Tax Comm'n); King Ridge Ski Area, March 29, 1971 (N.H. Tax Comm'n). In a recent opinion the State board of taxation decided that "lift machinery is not real estate and therefore not taxable under RSA 72:6; however, buildings and permanent foundations are taxable under the statute." *Whaleback Mountain, Inc. v. Enfield*, October 3, 1974 (N.H. Board of Taxation). The board remanded the case to the selectmen for a determination of "what part of the ski lift is real estate and what part not." *Id.*

Whether ski lifts are taxable as "real estate" depends upon the scope of the term as it is used in RSA 72:6. Plaintiff contends that real estate within the meaning of RSA 72:6 is the "legislative equivalent of 'land' at common law". The narrowness of plaintiff's in-

terpretation, however, does not allow for the undoubted power of the legislature in this State to make any type of property realty for purposes of taxation even though it is personalty at common law. *Kolodny v. Laconia,* 96 N.H. 337, 338, 76 A.2d 507, 508 (1950). In this case it is more meaningful to examine the language of the statute as amended in 1957, in light of its purpose to "increase the tax property rather than decrease it." N.H.S. Jour. 761 (1957); Laws 1957, 202:1; *see Gilford v. State Tax Commission,* 108 N.H. 167, 168, 229 A.2d 691, 693 (1967); *Frizzell v. Charlestown,* 107 N.H. 286, 288, 220 A.2d 742, 744 (1966).

The nature, location and use of ski lifts support the conclusion of the State tax commission that ski lifts, including "cables, engines, gear boxes, towers, motive sources, sheave wheels, chairs, t-bars, cable grips and all other peripheral property comprising ski lifts" are taxable as real estate within the scope of RSA 72:6. Functionally, a ski lift is an integrated whole which cannot be readily segregated into its component parts. The towers, the terminals, the chairs, the cables and all of the associated mechanisms operate as a unit to transport skiers uphill. *See Automatic Sprinkler Corp. v. Marston,* 94 N.H. 375, 376, 54 A.2d 154, 155 (1947); Annot., 6 A.L.R.3d 497 (1966); 5 R. Powell, Real Property § 660, at 96.6 (1974). The six ski lifts involved in this case are located on hills which have been specially cleared and graded for downhill skiing. The exclusive use of the lifts is intimately intertwined with the primary use of the land itself. The land cannot be used as a winter ski area without a facile means for conveying people to the top of the ski runs. *Sherburne Corp. v. Sherburne,* 124 Vt. 481, 483, 207 A.2d 125, 127 (1965); Annot., 41 A.L.R.2d 664, 665 (1955) (Later Case Service at 142 [1969]); *see* J. Hellerstein, State and Local Taxation 76 (1969); Note, *Defining "Real Estate" for the Tax Gatherer,* 12 U. Pitt. L. Rev. 604 (1951). This result comports with the apparent legislative policy behind RSA 72:6 to provide local government units with broad power to tax real property within their boundaries. *See* Harriss, *Property Taxation and the Future of State-Local Finance,* 51 Taxes 683, 686 (1973).

Inasmuch as we have determined ski lifts to be taxable under RSA 72:6 in their entirety as functional units, answers to the second and third questions transferred are unnecessary.

*Plaintiff's appeals dismissed.*

All concurred.